L**a**M**onica** H**erbst** & M**aniscalco**, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: 516.826.6500
Gary F. Herbst, Esq.
David A. Blansky, Esq.
Wendy J. Rothstein, Esq.
*Attorneys for Gregory Messer, as Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

LEE ALEXANDER BRESSLER,

         Debtor.
----------------------------------------------------------x
GREGORY MESSER, ESQ., as Chapter 7
Trustee of Lee Alexander Bressler,

         Plaintiff,
  -against-

AMY BRESSLER, as TRUSTEE OF THE
83 SPRING CLOSE TRUST, and THE
83 SPRING CLOSE TRUST,

         Defendants.
----------------------------------------------------------x

Chapter 7
Case No. 18-13098-MG

Adv Pro. No.

**COMPLAINT**

Plaintiff, Gregory Messer, Esq., solely as Chapter 7 Trustee ("Plaintiff") of the estate of Lee Alexander Bressler (the "Debtor" or "Lee"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, as and for his Complaint against defendants Amy Bressler, as Trustee of the 83 Spring Close Trust ("Amy Bressler"), and 83 Spring Close Trust (the "Spring Close Trust") (collectively, the "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.     This adversary proceeding is brought by the Trustee, inter alia, (i) for turnover of property of the estate; (ii) for declaratory relief piercing the Spring Close Trust for the benefit of

1

this estate and its creditors, and (iii) declaratory relief finding that the Spring Close Trust is the alter ego of the Debtor.

## SUBJECT MATTER JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

3. The predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 323, 541, 542, 550 and 551 (the "Bankruptcy Code") and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure and New York common law.

4. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409(a).

5. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), and.

6. Plaintiff is authorized to file this action pursuant to Bankruptcy Code § 323 and Bankruptcy Rule 6009.

7. Pursuant to Local Rule 7008-1 of the Bankruptcy Court for the Southern District of New York, Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES AND PROCEDURAL HISTORY

8. On October 12, 2018 (the "Filing Date"), the Debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code.

9. Plaintiff was appointed Chapter 7 Trustee, has since qualified and is now the permanent Trustee administering the Debtor's estate.

10. Plaintiff is authorized to file this action under Bankruptcy Code § 323 and Bankruptcy Rule 6009.

11. The Spring Close Trust, is a trust created under the provisions of The Jane C. Bressler 2010 Family Trust (the "2010 Family Trust").

12. Amy Bressler is an individual residing at 160 West End Avenue, Apt. 23P, New York, New York 10023.

13. At all times relevant, Amy Bressler was, and continues to be, the Trustee of the Spring Close Trust.

14. Amy Bressler is the Debtor's sister.

15. Carbon Investment Partners, LLC and Carbon Master Fund, LP (collectively, "Carbon") commenced two actions before the American Arbitration Association ("AAA") against the Debtor in March 2018 for breach of fiduciary duty and fraud arising from the collapse of the Carbon Master Fund I, LP (the "Fund").

16. The Debtor was Carbon's former chief investment officer and portfolio manager.

17. The two actions were consolidated for determination before AAA.

18. On February 18, 2019, AAA issued an order granting, in part, Carbon's motion for sanctions due to the Debtor's violation of discovery orders, which included withholding and spoliating sources of evidence, and provided for an adverse inference that the potential sources of evidence withheld and destroyed by the Debtor would support Carbon's claims against the Debtor and defenses to the Debtor's counterclaims.

19. Following a hearing on the merits held between March 18 and March 22, 2019 and additional excerpts of testimony being received in late March 2019, the matter was submitted for decision on April 1, 2019 to AAA.

20. On April 30, 2019, AAA issued its final award in favor of Carbon (the "Final Award"), holding "by clear and convincing evidence that Bressler fraudulently misled Carbon and

3

its investors, resulting in significant injury. The evidence includes Bressler's admissions that he made affirmative misrepresentations about the Fund, its trading, performance and gains and losses, and failed to disclose material facts to his partners." [Main Case Dkt No. 102-1]

21. The Final Award granted approximately $16,800,000 in total damages to Carbon.

22. The Final Award made numerous factual findings, including, but not limited to:

   a. The Debtor's conduct was "willful," "without remorse" and "fraudulently misled Carbon and its investors, resulting in significant injury." (Final Award at 6-7.)

   b. In April and May 2017, the Debtor executed trades outside of the Fund's mandate and incurred losses. (*Id*. at 12.)

   b. "Bressler used the Jefferies Side Accounts so that his unauthorized trading activity would not be discovered by the other members of Carbon GP, despite Carbon GP's efforts to monitor trading activity in the Fund's primary trading account." (*Id*. at 13.)

   c. "Jefferies did not prohibit or discourage Bressler's trading in the Jefferies Side Accounts, even though Bressler's trades violated the Fund's limits on trade exposure, Jefferies's internal rules regarding margin trading, and FINRA Rules. One Jefferies's representative (Barsam Lakani) identified Carbon as a potential source of increased commissions from trades and financing revenue." (*Id*. at 13.)

   d. "[N]either Jefferies nor Bressler informed Nagel or Bradford of the existence of the Jefferies Side Accounts, the trading occurring within them, or Bressler's trading violations. Bressler and Jefferies did not disclose these facts to prospective investors (including potential investors Jefferies was helping solicit to invest in Carbon)." (*Id*. at 14.)

   e. "Bressler's acts benefitted himself (by providing him an opportunity to skim profits from Carbon and pay off his trust loan) and Jefferies (in the form of higher commissions and fees)."

   f. "Bressler did not disclose the actual destruction of the Fund to Nagel and Bradford until February 11, 201[9]" and "Bressler caused the Fund's losses."(*Id*. at 16.)

   g. "Bressler made numerous misrepresentations," "concealed material facts" and "failed to disclose numerous material facts regarding the Fund's management to Carbon," including his misrepresentations that he "would employ a market-neutral, industrials focused, capital preservation strategy." (*Id*. at 16, 18.)

4

23. Included within the Final Award's damages are $2.5 million in punitive damages based upon, in part, on the Debtor's lack of remorse, the injury to his victims and his intentional efforts to conceal his misconduct by spoliating evidence during the course of the arbitration.

24. On May 2, 2019, Plaintiff filed a complaint in another related adversary proceeding under Adversary Proceeding No. 19-01127, against Amy Bressler, as Trustee of the Spring Close Trust, seeking, inter alia, to avoid and recover the transfers of certain funds by the Debtor as fraudulent conveyances and seeking the imposition of an equitable lien or constructive trust against the Property (defined below).

25. On April 29, 2020, the Court issued a memorandum opinion denying the Debtor his discharge, finding, among other things, that: (a) the Debtor willfully and intentionally erased his laptop computer on March 3, 2019, prior to its production in the AAA arbitration; (b) the Debtor gave false and misleading accounts to Plaintiff at the Section 341 Meeting; (c) in the Debtor's Initial Schedules, SOFA or Petition, and at the 341 Meeting, the Debtor failed to disclose his ownership interests in (i) the Microsoft on-hire stock award, (ii) a Santander checking account, which was used by the Debtor for the purpose of the acquisition that is the subject of Adversary Proceeding No. 19-01127 and discussed below, and (iii) South Wacker Holdings, LLC; (d) the Debtor failed to identify Microsoft Corp. as his employer; and (e) the Debtor intentionally withheld financial records and information from Plaintiff. [Main Case Dkt No. 193]

26. On May 6, 2020, the Court entered judgment denying the Debtor his discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B), 727(a)(3), 727(a)(4)(A) and 727(a)(4)(D) in Adversary Proceeding No. 19-01317.

**ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

**A.     The Creation of the Spring Close Trust**

27.     On April 22, 2017, Amy Bressler, as trustee, signed an Investment Services Agreement and application with Northern Trust to create an account in the name of the Non-GTS Exempt Trust FBO Lee Bressler, account no. ending in 8839.

28.     On April 24, 2017, Amy Bressler, as trustee, executed a certificate of trust on behalf of the Non-GST Exempt Trust FBO Lee A. Bressler under Article IV of the 2010 Family Trust.

29.     Article IV of the 2010 Family Trust provides for the creation of separate trusts for the benefit of Jane C. Bressler's issue and imposes limitations on the distributions that may be made from such trusts.

30.     Article IV(A)(1) of the 2010 Family Trust provides that "[t]he Trustee shall pay to the Primary Beneficiary, or apply for his or her benefit, as much of the Trust Fund as the Trustees, in their sole discretion, shall determine is ***necessary for the Primary Beneficiary's health, education, support and maintenance, taking into consideration the Primary Beneficiary's financial resources apart from the Trust***." (emphasis added)

31.     Article IV(A)(3) of the 2010 Family Trust provides that the "entire Trust Fund may be distributed at any time for the benefit of the Primary Beneficiary pursuant to this section, even though such distribution terminates the Trust and without regard to the interest of any remainderman of the Trust."

32.     The Debtor was the only beneficiary of the Non-GST Exempt Trust FBO Lee A. Bressler.

33. In late May, the Debtor, in consultation with his wife, Shira Bressler, Esq. ("Shira"), and his real estate counsel, Jay Ringel, Esq. ("Ringel"), made a decision to rename that trust for "anonymity purposes".

34. On or about May 25, 2017, a name change request was made to the Internal Revenue Service to change the name of the trust from the Non-GST Exempt Trust FBO Lee A. Bressler to the Spring Close Trust.

35. By letter dated July 13, 2017, the Internal Revenue Service confirmed the name change.

36. On July 23, 2017, Amy, as trustee, signed an Investment Services Agreement and application with Northern Trust to create an account in the name of Spring Close Trust, account no. ending in 8830 (the "Trust Account").

37. At all times relevant, the Debtor was (and continues to be) the sole beneficiary of the Spring Close Trust.

38. The Trust Account was initially funded on May 1, 2017 with proceeds from the sale of Jane Bressler's apartment in New York City.

39. Shortly thereafter, disbursements began to be made directly to the Debtor or for his benefit from the Trust Account.

40. These disbursements included, but were not limited to:

   a. a $1,000,000 investment in the Carbon Master Fund, LP on May 22, 2017;

   b. a $100,000 distribution to the Debtor on May 25, 2017;

   c. the payment of the $153,500 contract deposit for the Debtor's benefit described below into the IOLA account of the Debtor's personal real estate attorney on May 18, 2017;

7

d. the transfer of $1,165,000 to the Debtor's Santander Account (defined below) on June 8, 2017;

e. the transfer of $275,000.00 into the HELOC Account (defined below) on June 8, 2017;

f. the July 18, 2017 payment of $39,324.74 to a private school for the Debtor's daughter;

g. a July 27, 2017 additional investment in the Carbon Master Fund, LP of $350,000;

h. an August 1, 2017 additional investment in the Carbon Master Fund, LP of $50,000;

i. a $31,000 distribution to the Debtor on April 17, 2018 for purposes of paying his 2017 federal and New York State income taxes;

j. an April 30, 2018 distribution of $61,000 to the Debtor;

k. a July 31, 2018 distribution of $2,500 to the Debtor;

l. an August 2, 2018 check payment to Harris, St. Laurent & Chaudry LLP, a New York city based law firm, in the sum of $10,000 for the Debtor's benefit;

m. an August 27, 2018 distribution of $6,000 to the Debtor;

n. a September 26, 2018 distribution of $5,000 to the Debtor;

o. an October 15, 2018 payment of $30,000 to the Debtor's original bankruptcy counsel, Rosen & Associates, P.C.;

p. an October 17, 2018 payment of $20,000 to the Debtor's original bankruptcy counsel, Rosen & Associates, P.C.;

q. an October 25, 2018 distribution of $5,000 to the Debtor;

   r. a November 26, 2018 distribution of $5,000 to the Debtor;

   s. a December 28, 2018 distribution of $6,100 to the Debtor;

   t. a January 24, 2019 distribution of $5,500 to the Debtor;

   u. a January 24, 2019 distribution of $44,304.95 to the Debtor;

   v. a February 28, 2019 payment of $34,682 to the Debtor's original bankruptcy counsel, Rosen & Associates, P.C.; and

   w. a March 19, 2019 payment of $70,000 to the Debtor's original bankruptcy counsel, Rosen & Associates, P.C.

  41. While the Debtor's original bankruptcy counsel, Rosen & Associates, P.C., reported $50,000 in compensation in the disclosure filed with the Court, the Debtor, rather than the Spring Close Trust, was identified as the source of the compensation.

  42. The statements for the Trust Account for the period June 1, 2017 through November 30, 2018 were addressed to the Debtor's attention at his residence in New York City.

  43. As of June 30, 2017, the Trust Account had a value of approximately $43,000.

**B. The Debtor's Bank Accounts**

  44. At all times relevant, the Debtor maintained one or more accounts at Santander Bank ("Santander"), including a checking account ending 4097 (the "Santander Account").

  45. At all times relevant, the Debtor was the sole holder of the Santander Account.

  46. The Debtor did not disclose the Santander Account on his Petition.

  47. At all times relevant, the Debtor had dominion and control over the funds in the Santander Account.

48. At all times relevant, the Debtor and Shira were both parties to a line of credit at Santander Bank and jointly maintained a HELOC account ending in 4831 (the "HELOC Account").

49. At all times relevant, the Debtor exercised dominion and control over the funds in the HELOC Account.

**C.     The Contract of Sale and Purchase of Property**

50. On September 29, 2020, Amy Bressler, as trustee, filed a Limited Objection to the Motion for Relief from The Automatic Stay filed by Carbon (the "Objection") [Main Dkt No. 215].

51. Upon review of the Objection, Plaintiff discovered for the first time that on or about May 19, 2017, the Debtor and his Shira entered into a contract of sale (the "Contract of Sale") to purchase the real property known as, and located at, 83 Spring Close Highway, East Hampton, New York 11937 (the "Property").

52. The Property was one that was familiar to the Debtor as it had been rented by his family for a decade.

53. The Debtor and Shira hired Ringel to negotiate the terms of the Contract of Sale for the purchase of the Property.

54. The Debtor and Shira were eager to close on the purchase prior to July 4, 2017.

55. The Debtor negotiated the purchase price.

56. In negotiating the terms of sale, the Debtor, Shira and Ringel reached an agreement with the seller allowing for a limited assignment of the Contract of Sale.

57. Amy Bressler was not a party to the negotiations over the sale price or fixing the terms of the Contract of Sale.

58. According to the Contract of Sale, the purchasers (defined to be the Debtor and Shira) had the right to assign the contract to an LLC, trust, or other entity of which the Debtor has a controlling interest or is the sole beneficiary of such trust provided that the Debtor remained personally liable.

59. Consequently, even if the right to purchase the Property pursuant to the Contract of Sale was assigned to a qualifying party, the Debtor would still be personally liable under the Contract of Sale.

60. On or about May 30, 2017, Ringel notified the title company that his clients, the Debtor and Shira, were going to assign the Contract of Sale for the Property to a trust and that a name change for "anonymity purposes" was pending.

61. The Debtor, Shira, and Ringel explored closing by power of attorney.

62. They alternatively considered substituting Shira as trustee for purposes of the closing.

63. On May 31, 2017, the title company asked Ringel to confirm that:

Amy C. Bressler, Trustee of the trust to be created will be the sole trustee and will sign the assignment of contract as Trustee (of the to be named Trust). If this is the case, the modification is acceptable and Amy can give you poa to sign the rpt as a ministerial duty.

64. In late May 2017, the Debtor contacted trust and estate counsel for the Spring Close Trust about modifying the provisions of the trust agreement to allow Amy Bressler, as trustee of the Spring Close Trust, to close on the purchase through a power of attorney.

65. On June 1, 2017, Ringel informed Shira that they would be able to have Amy Bressler "pre-sign" documents for the closing.

66. On June 6, 2017, Ringel notified the title insurance company that the purchaser of the Property would be "Amy L. Bressler, as Trustee of the Spring Close Trust".

67. On June 6, 2017, at the Debtor's direction, Ringel prepared an envelope addressed to Amy Bressler for delivery by personal messenger to her place of residence containing documents she needed to execute in connection with the closing on the purchase of the Property.

68. On June 6, 2017, a messenger collected the envelope from Ringel.

69. On June 7, 2017, Shira advised Ringel that Amy Bressler was executing the documents and returning them to Ringel via messenger.

70. By Assignment of Contract dated "June __, 2017", the Debtor and Shira assigned all rights, title and interest in the Contract of Sale to Amy L. Bressler, as Trustee of the Spring Close Trust.

71. On June 7, 2017, the Debtor informed Ringel that he had made arrangements with "the bank to send the wire first thing in the morning".

72. Later that day, the Debtor reported that he provided the wrong account number and would need to make new arrangements the following day, June 8, 2017.

73. On June 7, 2017, Shira circulated copies of the documents executed by Amy Bressler to the Debtor and Ringel.

74. It is the only e-mail known to Plaintiff at this time that included Amy Bressler as a recipient of an e-mail relating to the purchase of the Property.

75. Shira delivered funds to the closing for the purchase of the Property.

76. The closing proceeded on June 12, 2017.

77. By deed dated June 12, 2017 and recorded on July 3, 2017, Amy Bressler, as Trustee of the Spring Close Trust took title to the Property for a purchase price of $1,535,000 (the "Purchase Price").

12

78. Amy Bressler, as Trustee of the Spring Close Trust was represented at the closing of the sale of the Property by Ringel.

79. The Debtor and Shira took possession of the Property immediately thereafter.

80. One June 13, 2017, believing she and the Debtor were the owners of the Property, Shira inquired of Ringel "if we really own the house even though Suffolk County is backed up, and we won't be on record for 4-6 weeks???"

81. Ringel responded "Amy L. Bressler, as Trustee".

82. On June 23, 2017, Ringel e-mailed the closing statement with attachments to the Debtor and Shira, but not Amy Bressler, the purported purchaser.

83. Ringel also advised them that $2,181.54 remained in his attorney trust account.

84. At the Debtor's direction, Ringel wrote the Debtor a check in that amount.

D. **The Transfers and Funding of the Purchase Price**

85. On May 18, 2017, $153,500 was wired from the Trust Account to Ringel's IOLA account as the down payment under the Contract of Sale (the "Down Payment").

86. The wire transmittal referenced wire referenced "LEE BRESSLER DOWN PAYMENT 83 SPRING CLOSE HWY, EAST HAMPTON, NY".

87. On June 8, 2017, a wire of $1,165,000 was made from the Trust Account into the Debtor's Santander Account.

88. The Debtor made all the necessary arrangements for this wire transfer from the Trust Account to his Santander Account, and arranged for Amy Bressler to provide Northern Trust with verbal approval of these arrangements.

89. On June 8, 2017, a wire of $275,000.00 was made from the Trust Account into the HELOC Account.

90. The Debtor made all the necessary arrangements for this wire transfer from the Trust Account to the HELOC Account and arranged for Amy Bressler to provide Northern Trust with verbal approval of these arrangements.

91. On June 8, 2017, the Debtor used $313,025.44 of the funds wired into his Santander Account from the Trust Account to pay down the balance due on the HELOC Account.

92. On June 9, 2017, the Debtor drew down on the Santander Account in the sum of $852,146.00 and drew down on the HELOC Account in the sum of $587,854.00.

93. The amounts drawn from the Debtor's two accounts on June 9, 2017 were used to obtain two official checks from Santander Bank.

94. One, in the sum of $1,385,346.44, was paid to counsel for the seller of the Property.

95. The second in the sum of $54,653.56 was made payable to Ringel.

96. The bank checks drawn on the funds from the Debtor's Santander Account and HELOC Account were used to close on the purchase.

97. The Debtor failed to disclose any of the foregoing transactions on his Statement of Financial Affairs.

98. Notwithstanding that the $1,440,000 in funds used to obtain the official checks were drawn from accounts over which the Debtor had dominion and control and the deposit into Ringel's account was identified as being a deposit on behalf of the Debtor relating to the Property, Amy Bressler, as Trustee of the Spring Close Trust, took title to the Property rather than the Debtor.

99. At the time of the purchase of the Property, the Debtor had creditors holding unsecured claims against him, including, but not limited to, Carbon.

100. Upon information and belief, since the closing, the Debtor, Shira and their family have exclusively used the Property.

101. The Debtor, Shira and their family took up full-time residency there between March 2020 and October 2020 during the COVID pandemic and recently returned to their New York City apartment.

102. The Debtor and Shira retained their New York City residence subsequent to the closing on the purchase of the Property.

103. Suffolk County has valued the Property at $1,732,758 for purposes of the 2020 assessment roll.

104. Upon information and belief, the Property currently has a fair market value of no less than $2,500,000.

105. The Debtor has an equitable interest in the Property that may be realized for the benefit of the creditors of his estate.

### FIRST CLAIM FOR RELIEF
(Property of the Estate)

106. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "105" as if set forth fully herein.

107. The Debtor has a legal and equitable interest in the assets held by the Spring Close Trust, including the funds in the Trust Account and title to the Property.

108. The Property, the funds used to purchase the Property, and the remaining funds in the Trust Account are property of the estate.

109. By reason of the foregoing, Plaintiff is entitled to the entry of an Order, under Bankruptcy Code §§ 541 and 542, against Defendants: (a) in an amount as yet undetermined; (b) declaring the Debtor's interest in the Property to be the property of the estate and directing Defendant to immediately turnover the Debtor's interest in the Property and all other assets of the Spring Close Trust; and (c) for a full and complete accounting.

## SECOND CLAIM FOR RELIEF
(Piercing the Trust)

110. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "109" as if set forth fully herein.

111. At all times, the Debtor exercised total domination over the Spring Close Trust and the disposition of its assets.

112. The Debtor made all consequential decisions relating to the financial affairs of the Spring Close Trust and then had Amy Bressler "rubber stamp" his decisions.

113. The Debtor acted as the *de facto* trustee of the Spring Close Trust.

114. The Debtor was intended to be sole beneficiary of the Spring Close Trust.

115. Without regard to what was actually necessary for the Debtor's health, education, support and maintenance, the Debtor had Amy Bressler expend millions of dollars from the Trust Account.

116. These disbursements included distributions for his purchase of the Property under the Contract of Sale in which he and Shira were the contract vendees.

117. These disbursements included a $1.4 million investment in Carbon Master Fund, LP.

118. These disbursements included $154,682 in payments to the Debtor's original bankruptcy counsel, Rosen & Associates, P.C.

119. At no time did Amy Bressler take into account what was actually necessary for the Debtor's health, education, support and maintenance.

120. At no time did Amy Bressler exercise any independent business judgment with respect to the expenditures from the Trust Account requested by the Debtor.

121. At no time did Amy Bressler take into account the Debtor's financial resources apart from the assets in the Trust Account in verbally approving disbursements from the Trust Account.

122. The Debtor arranged for the wire of the Contract Deposit to Ringel.

123. The Debtor arranged for funds to be deposited into his Santander Account and HELOC Account from the Trust Account to fund the purchase of the Property.

124. The Debtor failed to receive any consideration for Defendants' acquisition of title of the Property using the funds over which he had dominion and control.

125. At the time the foregoing transactions, the Debtor had creditors holding unsecured claims against him, including, but not limited to creditors Carbon Investment Partners, LLC and Carbon Master Fund, L.P.

126. By reason of the foregoing, this estate and the Debtor's creditors have been injured.

127. The Debtor has an equitable interest in the property of the Spring Close Trust, including the Property, that may be realized for the benefit of the creditors of his estate.

128. It is necessary to pierce veil of the Spring Close Trust to achieve equity.

129. By reason of the foregoing, Plaintiff is entitled to an Order and Declaratory Judgment piercing the Spring Close Trust.

### THIRD CLAIM FOR RELIEF
(Alter Ego)

130. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "129" as if set forth fully herein.

131. Upon information and belief, at all times relevant, the Spring Close Trust did not observe corporate formalities.

132. Upon information and belief, at all times relevant, Amy Bressler never displayed hers own business discretion on behalf of the Spring Close Trust as relating to the disposition of its assets and the acquisition of the Property.

133. At all times relevant, the Spring Close Trust had no other purpose than to insulate assets from recovery by the Debtor's creditors while he continued have control over and benefit from those assets.

134. At all times relevant, the Debtor used Defendant as a mere instrumentality to protect assets from his creditors.

135. At all times relevant, the Debtor exercised complete control and domination of the financial decisions of the Spring Close Trust, which included causing the Spring Close Trust to make disbursements to or for his benefit for incomes taxes, bankruptcy counsel, to make an investment in Carbon, to fund his acquisition of the Property, and to pay for private school tuition for his daughter.

136. The Debtor was the sole beneficiary of the Spring Close Trust.

137. The Debtor and the Spring Close Trust acted as one and the same.

138. The Debtor has misused the Spring Close Trust's form for his personal ends and benefit and to shield assets from this estate and its creditors.

139. The Debtor has abused the privilege of operating under the Spring Close Trust such that the Court should, in equity, intervene.

140. The Spring Close Trust was at all time (and is) the alter ego and instrumentality of the Debtor.

141. The trust form of the Spring Close Trust should be disregarded.

142. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment declaring that Spring Close Trust to be the alter ego of the Debtor.

**WHEREFORE**, Plaintiff demands judgment on his claims for relief against Defendants as follows:

1. On his first claim for relief, a judgment, under §§ 541 and 542 of the Bankruptcy Code: (a) in a sum to be determined at trial, plus attorneys' fees and costs; (b) declaring the Debtor's interest in the Property to be the property of the estate and directing Defendants to immediately turnover the Debtor's interest in the assets of the Spring Close Trust, including the Property; and (c) for a full and complete accounting;

2. On the second claim for relief against Defendant seeking an Order and Declaratory Judgment piercing the Spring Close Trust, and award damages in a sum to be determined at trial, together with interest thereon, attorneys' fees and costs;

3. On the third claim for relief against Defendants seeking an Order and Judgment declaring that Spring Close Trust is an alter ego of the Debtor; and

4. For such other and further relief as the Court deems just and proper.

Dated: October 9, 2020
Wantagh, New York

                                              **LAMONICA HERBST & MANISCALCO, LLP**
                                              Attorneys for Plaintiff

By:   *s/ David A. Blansky*
        David A. Blansky
        Gary F. Herbst
        Partners of the Firm
        3305 Jerusalem Avenue
        Wantagh, New York 11793
        Telephone: 516.826.6500

m:\documents\company\cases\bressler, lee\adversary proceedings\83 spring close veil piercing adv pro\83 spring close trust complaint.clean.docx